### James Brooks & others *vs.* Abner S. Wright.

An agreement by a creditor to give time to his principal debtor, in a contract for the payment of money, need not be made in express language, in order to discharge a surety. It is sufficient if a mutual understanding and intention to that effect are proved.

In an action against a surety upon an acceptance, there was evidence tending to show that before the maturity thereof the holders promised the principal acceptor that if he would send them another draft, with a certain person's name upon it, they would let the acceptance run along; and that such a draft, payable in sixty days, was accordingly sent, and was accepted by the holders, who thereupon did not press for payment of the original acceptance until after the expiration of the sixty days. *Held*, that from this evidence the jury would be authorized to find that the holders of the original acceptance agreed to give sixty days' time to the principal acceptor thereof, and that the surety was thereby discharged.

Under Gen. Sts. c. 129, § 72, the facts set forth in the answer, in an action, cannot be used as evidence against the defendant therein, on the trial of the action.

CONTRACT upon a bill of exchange dated April 24th 1864, for $634, drawn by the plaintiffs upon G. R. Henry, in favor of the drawers, payable sixty days after date, accepted by said Henry, and bearing upon the back of it the name of Abner S. Wright. The writ was dated September 25th 1865, and was originally instituted against both Henry and Wright, but was discontinued as against Henry, he having received a discharge in insolvency.

The original declaration referred to the contract declared on as a promissory note; and the answer contained these words · " The said Wright will show that he, with the knowledge of the plaintiffs, signed the same as surety for the said George R. Henry, and the said plaintiffs, after the said note became due, without the knowledge or consent of said Wright, and for a valuable consideration, gave time to the said Henry to pay said note, and the said Henry did not pay the same, but became insolvent."

At the trial in the superior court, before *Lord*, J., the plaintiffs contended that the defendant signed the paper declared on under such circumstances as to make his liability an original joint and several liability with Henry, although only as surety.

Henry testified that just before the maturity of the agreement in suit, he sent to the plaintiffs by mail a letter inclosing a precisely similar instrument, with the exception that the name of one Ball was signed upon it in the place of Wright's, which bore date June 23d 1864, payable in sixty days from its date, and saying to the plaintiffs that it was sent to take up the one in suit; and that he had no reply to such letter, and nothing passed between them until after the maturity of the last named contract, on which it appeared that the plaintiffs had commenced and prosecuted for a month a suit against Ball, but abandoned it and then commenced the present suit.

One of the plaintiffs, Brooks, testified that, shortly before the maturity of the contract in suit, Henry met him in Boston, and told him that he could not pay it at maturity, and wished him not to press it. He asked Henry if he could not give him something else; Henry told him he could give him his brother-in-law, one Ball, for security, and, after more conversation, Brooks said

that if Henry would send him another draft with Ball's name upon it he would let this run along until that one should become due; and added, " I did let it run along till that became due."

At this part of the testimony the attention of the plaintiffs' counsel was called away, and he asked what the witness said. The counsel for the defendant said he said he would let it run along if he would give him Ball's name. The presiding judge then said, " Mr. Verry omits a portion that you may think important; the language of the witness was, he would let it run along till the other became due." At this the plaintiffs' counsel expressed surprise; thought the witness could not have so testified; that the judge must have misunderstood him; and requested that the witness might be allowed to repeat his testimony, which he did, omitting that part that it might run along till the other became due. During a long cross-examination upon that point, the witness's statements were not wholly intelligible or consistent, but he did not repeat that the draft was to run along till the other became due. The only other testimony bearing upon the subject of extension of the time was that of Wright, who testified that the plaintiff told him that he held the paper in suit as collateral to the draft on which Ball's name was.

The plaintiffs' counsel requested the court to instruct the jury that without the additional words " he would let this run along until that one should become due," the evidence was insufficient in law to warrant them in finding a verdict for the defendant. He made the request because it was for the jury to determine what the evidence was, that they might understand it differently from the judge, and that he wanted instructions applicable to the case as the jury would be warranted in finding the facts. This was not said in the hearing of the jury, and the judge replied, also not in the hearing of the jury, that he should not feel warranted in instructing the jury either that upon the whole evidence or upon all the evidence except a certain phrase they could not find an extension of the time, but told the counsel that he should not comment at all upon the facts, and should not state the evidence to the jury, but leave that wholly to their recollection, and should merely instruct them in relation to the law upon that subject

which he did as follows : " The defendant relies upon an agreement to extend the time of payment by the principal without the knowledge or consent of the defendant, who is a surety. To enable him to maintain this defence, it must appear that the plaintiffs agreed upon a valuable consideration to delay enforcing their claim for a certain definite specific time; that a mere agreement to let the demand run along, a mere agreement to slumber over their claim, was not sufficient; it must be an agreement to delay for a certain precise and definite time. This agreement need not necessarily be proved in so many words. You may consider all the evidence in the case, including the acts as well as the declarations of the parties, and all the facts and circumstances, and if you are satisfied upon the evidence that the parties came to an understanding and agreement in which both of their minds concurred that the claim was not to be enforced for such definite, certain, specific time, and for a valuable consideration, you will be authorized to find a verdict for the defendant. But you must be satisfied upon the evidence that there was such agreement."

There was much conflict in the evidence. The plaintiffs' counsel strongly urged to the jury that the clause in the answer, above copied, was conclusive that Henry was false and Brooks true, because it could not otherwise be accounted for that such an answer should be made. The judge in his charge alluded to this claim, and said, " If Henry, as he says, sent the draft with Ball's name on it, saying that it was sent to take up the previous one, all I can say to you is, that the answer properly sets that up as a defence, both by way of payment and extension of time ; if you can see anything in it beyond that, you will make such deductions as you think proper. I ought perhaps to add, that while you should take as true and reason from any facts stated in said answer, it is dangerous for a jury to draw inferences from legal phraseology in the formal statement of a defence."

The jury returned a verdict for the defendant, and the plaintiffs alleged exceptions.

*G. F. Hoar*, for the plaintiffs, cited 1 Parsons on Con. 510–514;

*Hunt* v. *Bridgham,* 2 Pick. 581 ; *Bellows* v. *Lovell,* 5 Pick. 307 *Agricultural Bank* v. *Bishop,* 6 Gray, 317, and cases cited.

*G. F. Verry,* for the defendant.

WELLS, J.* So far as the plaintiffs' request for instructions sought to separate a part of the testimony from the rest, so as to make the verdict operate as a special finding by the jury upon the particular testimony, about which the dispute arose, it was a matter entirely within the discretion of the judge to allow it or not. No exception lies to the manner in which he exercised that discretion.

The judge did, in effect, by the instructions which he gave, require the jury to find the fact that was involved in the disputed testimony, before they could render a verdict for the defendant. This was done so explicitly that the jury could not mistake its purpose and importance. But as the judge told the jury that the agreement need not " be proved in so many words," but might be deduced from all the evidence, " including the acts as well as the declarations of the parties," and " all the facts and circumstances," the precise question raised by the plaintiffs' request must be considered and determined, namely, whether all the testimony in the case, excluding the alleged but disputed statement of the plaintiff, " was insufficient in law to warrant them in finding a verdict for the defendant ; " it being upon an issue in which the burden of proof was upon the defendant.

This is the common question, so often decided, yet upon which no decision can furnish the precise rule or measure to be applied to another case. It is, whether there was any evidence, proper to be submitted to a jury, upon the question at issue. A majority of the court are of opinion that there was.

We know of no rule which requires that such an agreement to give time to a principal, by which a surety will be discharged, must be in writing, or in any precise form of words, or even in express language at all. It is a question of mutual understanding and intention, and, like other contracts, the agreement of the parties may be derived from and inferred by acts, declarations

---

* HOAR, J., did not sit in this case.

facts and circumstances. When such are the sources from which the mutual agreement of the parties is to be gathered, it is for the jury to determine what the intention and understanding were, if any, upon which the minds of the parties met. That is their contract. In doing this, they are not bound to give all parts of the testimony equal weight. They may believe a part and reject a part; and the court cannot correct their judgment upon the testimony by its own. Upon the evidence in this case, certain elements or conditions of a sufficient agreement are satisfactorily shown. 1st. The plaintiffs' knowledge, that Wright was a surety merely, may be inferred from the position of his name upon the paper. 2dly. Procuring the name of Ball upon the new security was a sufficient consideration for such an agreement. The only question of doubt then was, what was the understanding or agreement with which the new note or draft was procured and sent by Henry and accepted by the plaintiffs? The jury might have been satisfied, from the testimony of the plaintiffs, that, before the maturity of the draft, an arrangement was made with Henry that if he would send them another draft, with Ball's name, they "would let this run along;" no length of time for either being then fixed. They might also have been satisfied, from the testimony of Henry, that he did send them such a draft, with Ball's name, payable in sixty days, with a letter stating that it was "sent to take up" the one now in suit; and that the plaintiffs accepted it.

This statement of Henry, if believed, would have tended strongly to establish the defence of payment, but for the fact that the new draft at sixty days was not a full equivalent for the other, by the amount of the interest or discount for that time; and the testimony of the plaintiff was probably introduced to meet and parry that defence, by showing that the acceptance of the new draft was not as payment, but only in pursuance of their previous arrangement and promise to let the first draft "run along." Now the previous arrangement, indefinite as to time, being thus connected with and completed by the sending and acceptance of the new draft, upon a definite time, the jury might infer from the whole transaction, taken

together, that it was understood and intended by both parties that the time of payment should be extended until the new draft should mature. If they found from these facts that such was the agreement of the parties in this case, we cannot say, as a matter of law, that such finding was erroneous or unwarrantable upon the testimony.

We are of opinion, therefore, that the instruction, as asked for, should not have been given.

To the other exception there are several answers. The second draft might have been considered as a renewal or extension of the first; and thus account for the allegation that time had been given to the principal, without any inference that Henry was false in denying that he had the interview of which the plaintiff testified.

But the allegation relied on to contradict Henry, although contained in a joint answer, does not purport to be an allegation on the part of Henry, but of Wright alone.

A more conclusive answer is in the terms of Gen. Sts. *c.* 129, § 72. In a case in Suffolk County, *Walcott* v. *Kimball, post,* 460, decided since this case was argued, this court have held that that statute forbids the use which the plaintiffs' counsel sought to make of the allegations in the pleadings. He has therefore no ground of complaint against the remarks of the judge in this particular. *Exceptions overruled.*